# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

_____

No. 11-6067

_____

| | | |
|---|---|---|
| In re: James Arthur Cockhren;<br>Margaret Louise Cockhren | * | |
| | * | |
| | * | |
| Debtors | * | |
| | * | |
| Margaret Louise Cockhren, also known | * | |
| as Margaret L. Glass-Cockhren; | * | |
| James Arthur Cockhren, doing business | * | |
| as Cockhren Roofing & Contracting, | * | Appeal from the United States |
| doing business as Cockhren Housing | * | Bankruptcy Court for the |
| Mgmt | * | Northern District of Iowa |
| | * | |
| Debtors - Appellants | * | |
| | * | |
| v. | * | |
| | * | |
| MidWestOne Bank, its Holding Co. | * | |
| and/or any of their Directors, Officers, | * | |
| former and current Employees, | * | |
| Agents and Attorneys | * | |
| | * | |
| Interested party - Appellee | * | |
| | * | |
| Michael C. Dunbar | * | |
| | * | |
| Trustee - Appellee | * | |

_____

Submitted: March 29, 2012
Filed: April 9, 2012

_____

Before SCHERMER, FEDERMAN, and VENTERS, Bankruptcy Judges

FEDERMAN, Bankruptcy Judge

Debtors James and Margaret Cockhren appeal from the Bankruptcy Court's[1] Order Granting the Trustee's Motion for Approval of Compromise or Settlement of Controversy, relating to claims they asserted against MidWestOne Bank for lender liability and discrimination. They also request oral argument on appeal. For the reasons that follow, their request for oral argument is DENIED, and the Bankruptcy Court's Order is AFFIRMED.

**FACTUAL BACKGROUND**

The source of the dispute between the Debtors and MidWestOne Bank is a loan secured by the Debtors' property, which consists of their residence and an adjacent commercial lot. The parties have been involved in litigation over the loan since 2007. That litigation history is summarized as follows:

*Case No. CVCV104021 - The First State Court Lender Liability Action*

The Debtors, *pro se*, filed a lender liability action against the Bank and its former president, James Chizek, on December 11, 2007, in the Iowa District Court in Black Hawk County. On July 1, 2009, the Court granted the Bank's Motion for Summary Judgment and dismissed the case.

---

[1] The Honorable Paul J. Kilburg, United States Bankruptcy Judge for the Northern District of Iowa.

*Case No. EQCV104984 - The First Foreclosure Action*

This was a Foreclosure Petition filed by the Bank in the Iowa District Court in Black Hawk County on March 31, 2008. The Debtors, *pro se*, filed Answers and also asserted counterclaims against the Bank and Chizek. The foreclosure was stayed by a Chapter 13 bankruptcy filing, Case No. 08-01328, discussed immediately below. Based on the confirmed plan in that Chapter 13 case, the Bank dismissed the foreclosure part of the proceeding without prejudice. On September 9, 2010, the Court granted the Bank's motion to dismiss the Debtors' counterclaims.

*Case No. 08-01382 - The Chapter 13 Bankruptcy Case*

The Debtors, through counsel, filed a Chapter 13 bankruptcy petition on July 2, 2008 in the Bankruptcy Court for the Northern District of Iowa. Debtor James Cockhren was dismissed out of the case on October 2, 2008. An Order Confirming Amended Plan was entered as to Margaret Cockhren on November 30, 2009. The Bankruptcy Court dismissed the case on October 7, 2010 on the Bank's motion, due to default in the terms of the confirmed plan.

*Case No. LACV112367 - The Second State Court Lender Liability Action*

While the Chapter 13 Bankruptcy Case was pending, the Debtors filed another *pro se* lender liability Petition against the Bank and Chizek on April 7, 2010 in the Iowa District Court in Black Hawk County. The Bank answered and trial was apparently set for October 4, 2011. This action was stayed by the Debtors' instant Chapter 7 filing on March 22, 2011, discussed below. After the Bankruptcy Court in the instant Chapter 7 bankruptcy case lifted the stay to allow the Bank to defend in this case, and denied the Debtors' motion to dismiss the bankruptcy, the Iowa Court dismissed the Second State Court Lender Liability Action on June 30, 2011,

based on the conclusion that the cause of action belonged to the Trustee and that the Debtors lacked standing.

### *Case No. EQCV114957 - The Second Foreclosure Action*

While the Second State Court Lender Liability Action was pending, the Bank filed a second foreclosure petition on December 29, 2010 in the Iowa District Court for Black Hawk County. The Debtors answered *pro se* and again asserted counterclaims against the Bank and a current bank employee, Bill Roth. Hearing on the Bank's Motion for Summary Judgment was set for March 25, 2011. This Second Foreclosure Action was also stayed by the Debtors' instant Chapter 7 bankruptcy filing on March 22, 2011. Ultimately, the counterclaims in this case were also dismissed on June 30, 2011, based on the state court's conclusion that those claims belonged to the Trustee.

### *Case No. 11-00560 - The Instant Chapter 7 Bankruptcy Case*

As stated, on March 22, 2011, the Debtors, through counsel, filed this voluntary Chapter 7 bankruptcy petition to stop the Second Foreclosure Action. The Debtors listed counterclaims against the Bank as an asset on Schedule B, with a value of zero.

On March 25, 2011, the Bank filed a motion for relief from the stay. The Debtors filed an objection, asserting, among other things, that the property had equity and that the Bank had mischaracterized the loan as a commercial loan, rather than a residential loan. Hearing on the motion for relief was set on April 22.

Meanwhile, as mentioned above, on April 1, 2011, the Debtors filed a pleading in the Second Foreclosure Action, alleging lender liability and discrimination claims against the Bank and its employee, Bill Roth.

On April 21, the Debtors moved to dismiss the instant Chapter 7 bankruptcy case. They say in their appeal brief that they decided to dismiss the case when they learned at their April 18 meeting of creditors that the Chapter 7 filing would not ultimately stop the Second Foreclosure Action. Both the United States Trustee and the Bank opposed dismissal. The United States Trustee stated that the Trustee was investigating potential assets, and that the Debtors had not demonstrated cause to dismiss their Chapter 7 case, as required under 11 U.S.C. § 707(a). The Bank's objection stated that the Debtors may have assets relating to a barbeque business not organized under Iowa law and, further, that the Bank had made an offer to the Trustee to purchase the Debtors' claims against it for $5,000. The Bank said the Trustee had accepted the offer, subject to notice and Court approval, and that the Trustee had communicated this to the Debtors and their attorney at the April 18 meeting of creditors.

At the April 22 hearing on the motion for relief from stay, the Debtors withdrew their objection to it. The motion for relief from stay was granted that same day, both to allow the Bank to proceed with its foreclosure of the residence and commercial lot, and to allow the Bank, Chizek, and Roth to defend against the Debtors' counterclaims in the Second State Court Lender Liability Action and the Second Foreclosure Action in Black Hawk County.

On April 29, 2011, the Debtors' attorney filed a motion to withdraw as counsel, which motion was granted on May 6, 2011. The Debtors have proceeded *pro se* in the instant Chapter 7 bankruptcy case since that time.

On May 13, 2011, the Bankruptcy Court denied the Debtors' motion to dismiss the bankruptcy case because they failed to show sufficient cause and because it was probable there would be assets for distribution to creditors. The Debtors did not appeal that Order.

5

On June 6, 2011, the Debtors filed a Motion for Declaratory Judgment, Failure to Comply to 20 Day Notice of Rescission, and Request for Relief for Violation of Regulation Z Provisions of TILA, in the Second Foreclosure Action. They filed a similar pleading in the Bankruptcy Court on June 8.

On June 9, 2011, the Trustee filed with the Bankruptcy Court a motion to sell the Debtors' causes of action against the Bank and its officers and employees for $5,000. On June 15, 2011, the Trustee withdrew that motion as being filed incorrectly, and filed instead a motion to approve a compromise or settlement of controversy. That motion stated that the Trustee had received an offer from the Bank to purchase all of the Debtors' claims against the Bank and its agents and employees, whether past or present, and all of the Debtors' stock, if any, in two unscheduled non-operating Iowa corporations, for a total sum of $5,000.

On June 16, 2011, while this bankruptcy case was pending, the Debtors filed a lawsuit in the United States District Court for the Northern District of Iowa, Case No. 6:11-cv-02027-EJM (the "District Court Action"), apparently asserting the same claims they were asserting in the Second Foreclosure Action and in the Bankruptcy Court, including violations of Regulation Z and the Truth in Lending Act.

On June 23, 2011, the Bankruptcy Court denied the Debtors' Motion for Declaratory Judgment filed in the instant Chapter 7 bankruptcy case, in part because the Debtors conceded at hearing that the issues should be litigated in the other actions that were then still pending in state court and the federal district court.

On June 28, 2011, the Debtors filed an Objection to the motion to sell, asserting that the Bank was attempting to violate their rights by selling their causes of action.

As mentioned above, on June 30, 2011, the Iowa District Court dismissed the Second State Court Lender Liability Action, as well as the Debtors' counterclaims in the Second Foreclosure Action, concluding that the claims belonged to the bankruptcy Trustee and the Debtors lacked standing. It also denied the Debtors' Motion for Declaratory Judgment in the Second Foreclosure Action because their claims in that pleading were based on federal law and should therefore be litigated in the District Court Action.

On July 25, 2011, the Debtors filed an Amended Schedule B in this bankruptcy case, listing their claims against the Bank with a value of $2.5 million.

On August 10, 2011, the Bankruptcy Court set the Bank's motion to compromise for hearing on September 14, 2011. The Bank filed an exhibit list and exhibits for that hearing on September 2, 2011.

On September 12, 2011, the Debtors filed a motion to continue the hearing. That motion stated, in its entirety: "Due to unforseen health concerns, the [Debtors] hereby request that the hearing scheduled for September 14, 2011, at 9:45, in Independence, Iowa, be rescheduled." The following day, September 13, the Court denied the motion, concluding that the Debtors had not shown good cause for granting the continuance. The Court conducted the hearing as scheduled, and the Debtors did not appear. On September 16, 2011, the Court entered an Order granting the Trustee's motion to compromise.

In sum, the Court concluded that, because all of the alleged acts had occurred on or before the bankruptcy filing date of March 22, 2011, the Debtors' asserted claims against the Bank and its agents and employees were all assets of the bankruptcy estate pursuant to 11 U.S.C. § 541(a)(1). Further, the Debtors had no exemption to assert in the claims. Finally, the Court held that Bankruptcy Rule 9019 provided the Trustee with the authority, subject to notice and hearing, to compromise

7

the claim if he determined that a settlement was in the best interest of creditors. The Court found that the Debtors' claims against the Bank were "speculative at best," that the Trustee was not willing to incur the expenses associated with prosecuting the seemingly unsubstantiated lender liability and discrimination claims, and that the Debtors were not represented by counsel in the District Court Action. Based on that, the Court found that the offer of $5,000 was satisfactory and was not *de minimis*, and approved the settlement. The Debtors appeal.

## STANDARD OF REVIEW

We review findings of fact for clear error, and legal conclusions *de novo*.[2] A finding is clearly erroneous when the reviewing court is "left with the definite and firm conviction that a mistake has been committed."[3] We review the Bankruptcy Court's order approving a compromise or settlement for an abuse of discretion.[4] An abuse of discretion occurs if the court bases its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence.[5] Interpretation of rules presents a question of law that is subject to de novo review.[6]

---

[2] *First Nat'l Bank of Olathe v. Pontow (In re Pontow),* 111 F.3d 604, 609 (8th Cir. 1997); *Sholdan v. Dietz (In re Sholdan),* 108 F.3d 886, 888 (8th Cir. 1997); Fed. R. Bankr. P. 8013.

[3] *Anderson v. Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985).

[4] *In re Racing Services, Inc.*, 332 B.R. 581, 584 (B.A.P. 8th Cir. 2005) (citing *Van Horn v. Trickey*, 840 F.2d 604, 607 (8th Cir.1988)).

[5] *Id.* (citing *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990)).

[6] *Id.* (citing *Indiana Lumbermens Mut. Ins. Co. v. Timberland Pallet and Lumber Co.*, 195 F.3d 368, 374 (8th Cir. 1999)).

**DISCUSSION**

The Debtors appear to assert four issues on appeal. First, they point out in their Reply Brief that the Trustee did not file a brief on appeal. They incorrectly assert that the brief filed by the Bank's attorney was also filed on behalf of the Trustee. It was not. The brief was filed on behalf of only the Bank. As a party to the settlement to which the Debtors object, and as a named Appellee in this case, the Bank is an interested party and has standing to defend its position on the settlement and file a brief on appeal.[7]

Second, the Debtors assert that the Court erred by denying their motion to dismiss the current bankruptcy case and then in allowing the case to proceed despite their later filing deficiencies – which they concede were intended to cause the Court to dismiss the case for failing to comply with the Court's Rules and Orders. However, the Debtors did not appeal from the Order denying their motion to dismiss, and nothing obligated the Court to dismiss the case based on the Debtors' intentional filing deficiencies, particularly when the Court found that dismissing the case was not in the best interest of creditors. As the Bankruptcy Court held in denying the motion to dismiss, the Bankruptcy Code does not provide a simple escape mechanism for a Chapter 7 debtor who decides he wants to abandon his case prior to discharge.[8] "A Chapter 7 debtor has no absolute right to dismiss his or her case; in order to voluntarily dismiss the case, the debtor must show cause."[9] Further, although § 707(a) expressly mentions only cause, courts have read into it a requirement to protect creditors as well.[10]

---

[7] *See* Fed. R. Bankr. P. 8009(a)(2).

[8] *In re Asbury*, 423 B.R. 525, 529 (B.A.P. 8th Cir. 2010).

[9] *Id.* (citation omitted).

[10] *Id.*

9

Third, the Debtors assert that they were deprived of their due process and civil rights when the Court denied their motion for continuance and held the hearing in their absence.[11]

The decision to grant or deny a continuance of a hearing is within the discretion of the trial court and is only reversible upon showing abuse of discretion.[12] "We will not overturn a trial court's denial of a continuance unless the trial court clearly has abused its discretion, because continuances are not favored and should be granted only when a compelling reason has been shown."[13] Consistent with that principle, the Local Rules for the Northern District of Iowa provide that a continuance may be granted for good cause and that a motion to continue must specify the grounds

---

[11] The Debtors also say that approving the settlement without their attendance at the hearing is a violation of Article 8 of the Declaration of Human Rights, apparently referring to Article 8 of the Universal Declaration of Human Rights, which provides that "[e]veryone has the right to an effective remedy by the competent national tribunals for acts violating the fundamental rights granted him by the constitution or by law." However, the Universal Declaration of Human Rights is a declaration by the United Nations, not a treaty, and does not purport to be a statement of law or legal obligation. *Sneed v. Chase Home Finance LLC*, 2007 WL 1851674 (S.D. Cal. June 27, 2007) (not reported); *Tel-Oren v. Libyan Arab Republic*, 726 F.2d 774, 818 (D.C. Cir. 1984). It does not apply to a debtor's cause of action against a lender in bankruptcy cases. *Id.*

[12] *In re Rice*, 357 B.R. 514, 517 (B.A.P. 8th Cir. 2006) (*citing Lessmann v. Comm'r of Internal Revenue*, 327 F.2d 990, 996 (8th Cir.1964)).

[13] *United States v. Young*, 943 F.2d 24, 25 (8th Cir.1991) (quotation omitted), cert. denied, 503 U.S. 964, 112 S.Ct. 1571, 118 L.Ed.2d 216 (1992). *See also In re Martwick*, 60 F.3d 482 (8th Cir. 1995); *Kansas City Star Co. v. U.S.*, 240 F.2d 643, 651 (8th Cir. 1957) (holding that motions to continue are addressed to the sound discretion of the trial court and decisions on such motions will be sustained in the absence of pure abuse of such discretion).

for the request.[14]  Further, the Rules provide that a motion to continue which does not comply with the Local Rule may be denied without hearing.[15]

The Debtors assert that the Bankruptcy Court "disregarded" and "ignored" their request for continuance.  To the contrary, although the Court had denied the motion the day previous to the hearing, the Court addressed the request at the hearing. The Court denied the motion, in part, because the Debtors failed to abide by the Local Rules.  Local Rule 5071-1(c) requires a person intending to request a continuance to contact opposing counsel to advise them of the intended motion and to ascertain whether opposing counsel will consent to the motion.[16]  At the hearing, the Court asked counsel for the Bank, counsel for the Trustee, and counsel for the United States Trustee if the Debtors had contacted them and all three lawyers answered in the negative.

In addition, the sole basis asserted by the Debtors for the requested continuance was "unforseen health concerns."  In view of the fact that the motion offered no detail whatsoever, including whose health concern it was, what kind of health concern it was, and when the Debtors became aware of the health concern, and in the context of the history of the litigation between the parties, we cannot say that the denial of the motion was an abuse of discretion.

Finally, the Debtors appear to assert that the Court erred in approving the settlement.  Under Rule 9019, "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement."  A decision to approve

---

[14]  Local Rule 5071-1(a) and (e).

[15]  Local Rule 5071-1(i).

[16]  Local Rule 5071-1(c).

a settlement under Rule 9019 is within the discretion of the bankruptcy judge.[17]  In exercising its discretion under Rule 9019, the bankruptcy court must consider four factors bearing on the settlement's reasonableness:

> (1) the probability of success in the litigation; (2) the difficulties, if any, to be encountered in the matter of collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (4) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.[18]

An abuse of discretion occurs when a bankruptcy court does not weigh these factors and then approves or rejects the proposed settlement.[19]  In addition, the standard for compromise and approval of a settlement is whether it is "fair and equitable" and "in the best interests of the estate."[20]  "The purpose of a compromise is to allow the trustee and creditors to avoid the expenses and burdens associated with litigating sharply contested and dubious claims."[21]  "When considering reasonableness, there is no best compromise, only a range of reasonable compromises.  So as long as the one before the court falls within that range, it may be approved."[22]

---

[17]  *In re Racing Services, Inc.*, 332 B.R. 581, 586 (B.A.P. 8th Cir. 2005) (citing *Drexel, Burnham, Lambert, Inc. v. Flight Transp. Corp. (In re Flight Trans. Corp. Sec. Litig.*), 730 F.2d 1128, 1135 (8th Cir.1984)).

[18]  *Id.* (quoting *In re Flight Trans. Corp. Sec. Litig.*, 730 F.2d at 1135; *Drexel v. Loomis*, 35 F.2d 800, 806 (8th Cir.1929)).

[19]  *Id.* (citing *ReGen Capital III, Inc. v. Official Comm. of Unsecured Creditors ( In re Trism, Inc.*), 282 B.R. 662, 667 (B.A.P. 8th Cir. 2002)).

[20]  *In re Martin*, 212 B.R. 316, 319 (B.A.P. 8th Cir. 1997) (citations omitted).

[21]  *Id.* (citations, internal quotation marks, and brackets omitted).

[22]  *In re Racing Services*, 332 B.R. at 586 (citation omitted).

Here, the Bankruptcy Court found that the Debtors' claims against the Bank were speculative at best. Indeed, the Debtors schedules originally valued these claims at zero. The history of the litigation, including the fact that no attorney had represented them in any of the state court or federal district court litigation, supports that finding. The Court also noted that the Trustee, to whom the claim belonged, did not have the funds to pursue protracted litigation in the district court. The settlement proposed by the Trustee was, we conclude, within the range of reasonable compromises. The Bankruptcy Court did not err in approving it.

## REQUEST FOR ORAL ARGUMENT

The Debtors have requested oral argument. After examination of the briefs and record, we conclude that the facts and legal arguments are adequately presented in the briefs and record and that the decisional process would not be significantly aided by oral argument.[23] The request for oral argument is, therefore, DENIED.

## CONCLUSION

For the foregoing reasons, the Bankruptcy Court's Order approving the settlement between the Trustee and MidWestOne Bank is AFFIRMED. The Debtors' request for oral argument is DENIED.

_____

[23] Fed. R. Bankr. P. 8012.

13